

STATE OF LOUISIANA
COURT OF APPEAL
FIRST CIRCUIT

DOCKET NUMBER
2022 CA 1010

ISAAC ROBINSON

VERSUS

WAYNE AND BEVERLY PAPANIA
AND PYRENEES INVESTMENTS, LLC

Judgment Rendered: __MAR 0 6 2023__

* * * * *

ON APPEAL FROM THE
22ND JUDICIAL DISTRICT COURT, DIVISION A
ST. TAMMANY PARISH, LOUISIANA
DOCKET NUMBER 2005-11367

HONORABLE RAYMOND S. CHILDRESS, JUDGE PRESIDING

* * * * *

| | |
|---|---|
| James E. Moorman, III<br>Covington, Louisiana | Attorney for Defendants/<br>Third-Party Plaintiffs/Appellants<br>Wayne and Beverly Papania |
| William J. Faustermann, Jr.<br>Slidell, Louisiana | Attorney for Defendants/<br>Third-Party Defendants/Appellees<br>Pyrenees Investments, LLC and<br>Samuel C. LeBlanc, Jr. |

**BEFORE:   McCLENDON, HOLDRIDGE, and GREENE, JJ.**

McClendon, J. Concurs and Assigns Reasons.

**GREENE, J.**

Appellants, Wayne and Beverly Papania, appeal a judgment dismissing their third-party demand for breach of contract claims, fraud claims, and claims under the New Home Warranty Act (NHWA), against appellees, Pyrenees Investments, LLC, and its sole member, Samuel C. LeBlanc, Jr. Pyrenees and Mr. LeBlanc answered the appeal, seeking attorney fees and costs. After review, we affirm the judgment and deny the answer to the appeal.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

In 2004, the Papanias and Pyrenees signed a construction contract whereby Pyrenees, as the general contractor, would construct a new house for the Papanias in the Maple Ridge Subdivision in Covington, Louisiana. Mr. LeBlanc signed the construction contract on behalf of Pyrenees as its "Managing Member." In 2005, Isaac Robinson, a subcontractor on the job, filed suit on an open account against the Papanias and Pyrenees.[2] The Papanias then filed a third-party demand against Pyrenees claiming it was liable for any amounts they owed to Mr. Robinson. After terminating the contract in the fall of 2006, the Papanias twice amended their third-party demand to add Mr. LeBlanc as a third-party defendant, to assert additional claims for damages due to defective construction of the house, and to allege that Mr. LeBlanc fraudulently induced them to sign the construction contract by misrepresenting to them that Pyrenees held a valid contractor's license and proper insurance. Pursuant to certain exceptions and a motion for summary judgment, the trial court ultimately rendered judgment dismissing all of the Papanias' third-party claims against Pyrenees and Mr. LeBlanc.

In *Robinson v. Wayne and Beverly Papania and Pyrenees Investments, LLC*, 15-1354 (La. App. 1 Cir. 10/31/16), 207 So.3d 566, 581, *writ denied*, 16-2113 (La. 3/13/17), 216 So.3d 808 *(Robinson I)*, this Court reversed the trial court's judgment insofar as it

---

[1] We adopt certain facts and procedural history from this Court's previous opinion in *Robinson v. Wayne and Beverly Papania and Pyrenees Investments, LLC*, 15-1354 (La. App. 1 Cir. 10/31/16), 207 So.3d 566, 570, 577, 581, *writ denied*, 16-2113 (La. 3/13/17), 216 So.3d 808 *(Robinson I)*.

[2] The Papanias and Pyrenees each filed a reconventional demand against Mr. Robinson. The Papanias later settled their claim against Mr. Robinson. Claims involving Mr. Robinson are not at issue in this appeal.

dismissed the Papanias' non-NHWA claims (*i.e.*, breach of contract and fraud)[3] and their NHWA claim under La. R.S. 9:3145(A). On remand, the trial court conducted a trial, and thereafter, on May 12, 2022, signed a judgment dismissing all of the Papanias' remaining third-party claims against Pyrenees and Mr. LeBlanc with prejudice. The Papanias appeal the adverse judgment.

## DISCUSSION

In three assignments of error, the Papanias contend the trial court erred in dismissing their breach of contract claim, their fraud claim, and their NHWA claim under La. R.S. 9:3145(A).[4] Relying on former La. R.S. 37:2160 and La. C.C. art. 2033, the Papanias also contend their contract with Pyrenees is an absolute nullity, because Pyrenees, the contracting party, did not have a contractor's license and was not permitted to use Mr. LeBlanc's contractor's license in place of its own. We first determine the validity of the construction contract between the Papanias and Pyrenees, as this determination affects the analysis of the remaining issues raised by the assignments of error.

### Nullity of the Construction Contract

Under the NHWA, specifically La. R.S. 37:2160(A) and 37:2167(A),[5] it is unlawful for a contractor or builder – who is required to be licensed by the Louisiana State Licensing Board – to enter into a construction contract or work as a residential building contractor without the proper license. *Quaternary Resource Investigations, LLC v. Phillips*, 18-1543 (La. App. 1 Cir. 11/19/20), 316 So.3d 448, 459, *writ denied*, 20-01450 (La. 3/2/21), 311 So.3d 1059. These statutes embody rules of public order, and, under

---

[3] The *Robinson I* court affirmed the trial court's judgment insofar as it granted an exception of peremption and dismissed the Papanias' NHWA claims against Mr. LeBlanc under the one-year and two-year warranties set forth in La. R.S. 9:3144(A)(1) and (2). *Robinson I*, 207 So.3d at 580-81.

[4] The *Robinson I* court also reversed the trial court's judgment insofar as it dismissed the Papanias' negligent misrepresentation claim and statutory violation claim. *Robinson I*, 207 So.3d at 576-77. The Papanias do not appeal the dismissal of those claims.

[5] The applicable version of the NHWA is the one in effect on the date the homeowners first occupy the house. *Siragusa v. Bordelon*, 15-1372 (La. App. 1 Cir. 4/15/16), 195 So.3d 100, 104. We apply the 2007 version of the statutes, because the Papanias moved into the house in March 2007. We note, however, the substance of former La. R.S. 37:2160 and 2167 is now found at La. R.S. 37:2163. *See* 2022 La. Acts. No. 195, §§1-2, effective August 1, 2022.

3

La. C.C. art. 2030,[6] any contract made in violation of a rule of public order is an absolute nullity. *See Quaternary*, 316 So.3d at 459; *also see Ilgen Construction, LLC v. Raw Materials, LLC*, 20-0862 (La. App. 1 Cir. 4/16/21), 2021 WL 1438726, *2-3; *Korrapati v. Augustino Brothers Construction, LLC*, 19-426 (La. App. 5 Cir. 7/31/20), 302 So.3d 147, 153. In this case, it is undisputed that Pyrenees, the party who contracted with the Papanias, did not possess a residential building contractor's license. Mr. LeBlanc admits that it was he, Pyrenees' sole member, who held the license. Thus, the Papanias' construction contract with Pyrenees is indeed an absolute nullity. *See Quaternary*, 316 So.3d at 459.

An absolutely null contract is deemed to never have existed. La. C.C. art. 2033.[7] Therefore, an absolutely null contract is unenforceable, and a party to such cannot assert a cause of action for breach of the absolutely null contract. *See "We the People" Paralegal Services, L.L.C. v. Watley*, 33,480 (La. App. 2 Cir. 8/25/00), 766 So.2d 744, 749; *Jones v. Chevalier*, 579 So.2d 1217, 1218 (La. App. 3 Cir. 1991); *Williams v. Enmon*, 380 So.2d 144, 146 (La. App. 1 Cir. 1979), *writ denied*, 383 So.2d 12 (1980) (finding no rights can flow to either party from a null and void contract). Further, the NHWA does not apply to a construction contract that is absolutely null due to the builder's failure to obtain the proper residential building contractor's license. *Quaternary*, 316 So.3d at 460-61. Thus,

---

[6] Louisiana Civil Code article 2030 provides:

> A contract is absolutely null when it violates a rule of public order, as when the object of a contract is illicit or immoral. A contract that is absolutely null may not be confirmed.

> Absolute nullity may be invoked by any person or may be declared by the court on its own initiative.

[7] Louisiana Civil Code article 2033 provides:

> An absolutely null contract, or a relatively null contract that has been declared null by the court, is deemed never to have existed. The parties must be restored to the situation that existed before the contract was made. If it is impossible or impracticable to make restoration in kind, it may be made through an award of damages.

> Nevertheless, a performance rendered under a contract that is absolutely null because its object or its cause is illicit or immoral may not be recovered by a party who knew or should have known of the defect that makes the contract null. The performance may be recovered, however, when that party invokes the nullity to withdraw from the contract before its purpose is achieved and also in exceptional situations when, in the discretion of the court, that recovery would further the interest of justice.

> Absolute nullity may be raised as a defense even by a party who, at the time the contract was made, knew or should have known of the defect that makes the contract null.

4

because their construction contract was absolutely null, the Papanias do not have a breach of contract claim or an NHWA claim against Pyrenees or Mr. LeBlanc. We affirm the trial court's judgment insofar as it dismissed these claims and now determine if the Papanias have any other remedy.[8]

Although an absolutely null contract is deemed never to have existed, La. C.C. art. 2033 requires that the parties be restored to the situation that existed before the contract was made, if such is possible. *If it is impossible or impractical to make restoration in kind, restoration may be made by an award of damages. See* La. C.C. art. 2033. Here, it is clear that the Papanias and Pyrenees cannot be restored to the situation that existed before they entered into the construction contract. The record shows that the Papanias' house was substantially completed in the fall of 2006 (albeit not to their satisfaction), they moved into the house in March 2007, and as of the time the trial concluded in 2021, they still lived in the house. Thus, although the Papanias have no breach of contract claim or NHWA claim against Pyrenees or Mr. LeBlanc, we must determine if they are entitled to an award of damages under La. C.C. art. 2033.

The *Robinson I* Court found that the Papanias minimally alleged facts "which, if proven, would result in damages for increased costs and unmet expectations, i.e., amounts they would have incurred in connection with securing completion of the construction after termination of the construction contract."[9] *Robinson I,* 207 So.3d at 573. After the *Robinson I* remand and the subsequent trial, however, the trial court concluded that the Papanias (not Mr. LeBlanc) terminated the purported contract and ordered Mr. LeBlanc to leave the job site and would not allow him the opportunity to complete or repair the work. Although the record contains conflicting stories about the termination of the purported contract, the trial court was in the best position to assess

---

[8] We note that the trial court dismissed the breach of contract claim and NHWA claim for other reasons. However, this Court reviews judgments, not reasons for judgment, and may affirm a judgment for reasons other than those given by the trial court. *See LAD Services of Louisiana, L.L.C. v. Superior Derrick Services, L.L.C.,* 13-0163 (La. App. 1 Cir. 11/7/14), 167 So.3d 746, 753-54, *writ not considered,* 15-0086 (La. 4/2/15), 162 So.3d 392.

[9] In their third party demand, the Papanias claimed Pyrenees and Mr. LeBlanc were liable to them for damages for deficiencies in the house's foundation, structural integrity, roof construction, driveway construction, plumbing, electrical work, carpentry, painting, and stucco. The Papanias claimed Pyrenees and Mr. LeBlanc should be required to reimburse them for remedial work they undertook and collateral damages they incurred after they fired Mr. LeBlanc.

5

the credibility of the witnesses, particularly, Mr. Papania and Mr. LeBlanc. *See Catalanotto v. Homes*, 14-1274 (La. App. 1 Cir. 4/24/15), 2015 WL 1882588, *6, *writ denied*, 15-1010 (La. 9/11/15), 176 So.3d 1040. Mr. Papania testified that he gave Mr. LeBlanc a long list of problems three months before he fired him in September 2006, that Mr. LeBlanc did not correct the problems, and that after Mr. Papania fired him, Mr. LeBlanc then continued to come to the house for another three weeks trying to correct the problems. On the other hand, Mr. LeBlanc testified that Mr. Papania did not give him the problem list before firing him, and that he did not see the problem list until the Papanias filed suit against him. Mr. LeBlanc acknowledged that he did return to the house after Mr. Papania fired him to see if they could reconcile and finish the job, but such did not happen, because Mr. Papania threatened to have him arrested.

An appellate court may not set aside a trial court's factual findings absent manifest error or unless they are clearly wrong. *Stobart v. State through Department of Transportation and Development*, 617 So.2d 880, 882 (La. 1993); *Catalanotto*, 2015 WL 1882588 at *2. Where two permissible views of the evidence exist, the trial court's choice between them cannot be manifestly erroneous or clearly wrong. *Stobart*, 617 So.2d at 882. After reviewing the record, we conclude the trial court did not manifestly err in its factual and credibility determinations. The trial court apparently chose to believe Mr. LeBlanc's testimony rather than Mr. Papania's testimony. The record reasonably supports the trial court's finding that it was the Papanias, not Mr. LeBlanc, who terminated the parties' dealings and refused to let Mr. LeBlanc complete or repair work at the house. As such, we conclude, the Papanias are not entitled to damages under La. C.C. art. 2033.

**The Fraud Claim**

We now address the Papanias' contention that the trial court erred in dismissing their fraud claim. Louisiana Civil Code article 1953 defines fraud as a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. To succeed on an action for fraud against a party to a contract, three elements must be proved: (1) a misrepresentation, suppression, or omission of true information; (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to another; and (3) the error

6

induced by a fraudulent act must relate to a circumstance substantially influencing the victim's consent to the contract. *Robinson I*, 207 So.3d at 574.

The *Robinson I* Court determined the Papanias stated a cause of action in fraud against Pyrenees and Mr. LeBlanc, as follows:

> In the second amended, third-party demand, the Papanias averred that [Mr.] LeBlanc advised them that Pyrenees held a valid contractor's license for the construction of new homes and had in effect a valid insurance policy that would provide coverage for "the sorts of claims" for which the Papanias are presently suing. The Papanias also alleged that [Mr.] LeBlanc knew his misrepresentation that Pyrenees held a valid contractor's license was a principal cause for the contract. According to their November 4, 2009 pleading, the Papanias claimed that these two misrepresentations by [Mr.] LeBlanc induced them to execute and sign the construction contract with Pyrenees. In addition to iterating that the individuality and separateness between [Mr.] LeBlanc and Pyrenees ceased insofar as the construction contract, the Papanias claimed entitlement to reasonable damages for the fraudulent inducement of contract. Taking as true all of the Papanias' allegations of fact, we conclude they have stated a cause of action in fraud against [Mr.] LeBlanc and Pyrenees.

*Robinson I*, 207 So.3d at 574-75.

After the *Robinson I* remand and the subsequent trial, the trial court concluded that, although the Papanias may have stated a fraud cause of action, they had not proved fraud against Mr. LeBlanc and Pyrenees. The trial court factually determined that Mr. LeBlanc, Pyrenees' sole member, did have a contractor's license, did have insurance, and remained a licensed contractor during the entire construction period. The trial court also found that the Papanias dealt with Mr. LeBlanc at all times, knew that he was the licensed contractor, and knew that he would be building their house. The trial court found no misrepresentation, suppression, or omission of true information and that the Papanias had not proven intent to obtain an unjust advantage. We review these factual findings under the manifest error standard of review. *Quaternary*, 316 So.3d at 466, n.21.

At trial, Mr. LeBlanc admitted that the construction contract named Pyrenees as the contractor but also admitted that Pyrenees did not hold a contractor's license or insurance. He testified that, at all relevant times, the contractor's license and insurance were instead issued to him personally. In support of this testimony, Mr. LeBlanc introduced documentation verifying that he held Louisiana residential contractor licenses for 2004, 2005, and 2006, and that he had commercial general liability insurance in effect for 2005, which he testified was renewed for 2006. Regarding the Papanias' knowledge,

7

Mr. Papania testified that Mr. LeBlanc gave him the impression that Pyrenees had a valid contractor's license. However, he also testified that, even though he signed the construction contract listing Pyrenees as the contractor, he knew Pyrenees was Mr. LeBlanc's company, he knew "somebody" had a license, and, to him, Pyrenees and Mr. LeBlanc were "one in the same." Also, Mrs. Papania signed a subdivision building permit plainly naming Mr. LeBlanc as the builder. After reviewing the testimony and the documentary evidence, we conclude a reasonable factual basis exists in the record for the trial court's finding that Mr. LeBlanc's actions regarding licensure and insurance were not fraudulent – as such, the trial court's finding was not clearly wrong. *Id.* The Papanias' argument to the contrary is without merit.[10] We affirm the trial court's dismissal of the fraud claim.

## ANSWER TO THE APPEAL

Pyrenees and Mr. LeBlanc answered the Papanias' appeal, claiming the trial court erred in failing to award them attorney fees and costs for defending the fraud claim, under the NHWA, and damages for frivolous appeal. Under Louisiana law, attorney fees are recoverable only where specifically authorized by statute or contract. *Courville v. Allied Professionals Insurance Company*, 16-1354 (La. App. 1 Cir. 4/12/17), 218 So.3d 144, 149, *writ denied*, 17-0783 (La. 10/27/17), 228 So.3d 1223. The Louisiana Civil Code provides for attorney fees when rescission of a contract is granted because of fraud. *See* La. C.C. art. 1958. And, La. R.S. 9:3149(A) allows a homeowner to recover attorney fees from a builder who violates the NHWA. However, Pyrenees and Mr. LeBlanc cite to no statute or contract whereby attorney fees are recoverable by a party required to *defend* a fraud claim or an NHWA claim. Further, a trial court has great discretion in assessing costs, and, on review, an appellate court will not disturb a trial court's cost assessment absent an abuse of that discretion. *Williams v. Leeper*, 21-1177 (La. App. 1 Cir. 4/8/22), 341 So.3d 850, 856.

---

[10] In brief, the Papanias also argue Mr. LeBlanc committed fraud by misrepresenting that the plans they provided to him were sufficient to complete the job. The Papanias did not rely on this basis at trial, did not mention it in their post-trial memorandum, and the trial court did not specifically rule on this basis when addressing the Papanias' fraud claim. We decline to address this argument. *See Burniac v. Costner*, 18-1709 (La. App. 1 Cir. 5/31/19), 277 So.3d 1204, 1210.

Regarding damages for frivolous appeal, La. C.C.P. art. 2164 does allow such an award; but, La. C.C.P. art. 2164 is penal in nature and we must construe it strictly. *Willis v. EAN Holdings*, 15-1538 (La. App. 1 Cir. 4/12/17), 218 So.3d 177, 184, *writ denied*, 17-789 (La. 9/22/17), 226 So.3d 438. An appellate court should only award damages for frivolous appeal when it is obvious that the appeal was taken solely for delay, or that counsel is not sincere in the view of the law he advocates, even though the court finds that view to be without merit. *Id.* Although we find no merit in the Papanias' claims, we do not find that this appeal meets the requirements of a frivolous appeal. *Id.*

For the above reasons, we find the trial court did not abuse its discretion in failing to award Pyrenees and Mr. LeBlanc attorney fees and costs, and we decline to award damages or attorney fees for frivolous appeal. We deny the answer to the appeal filed by Pyrenees and Mr. LeBlanc.

## CONCLUSION

For the above reasons, we affirm the trial court's judgment dismissing all claims asserted by Wayne and Beverly Papania in their third party demand, as supplemented and amended, against Pyrenees Investments, LLC and Samuel C. LeBlanc, Jr. We deny the answer to the appeal filed by Pyrenees Investments, LLC and Samuel C. LeBlanc, Jr. We assess costs of the appeal to Wayne and Beverly Papania.

**JUDGMENT AFFIRMED; ANSWER TO APPEAL DENIED.**



**STATE OF LOUISIANA**

**COURT OF APPEAL**

**FIRST CIRCUIT**

**2022 CA 1010**

**ISAAC ROBINSON**

**VERSUS**

**WAYNE AND BEVERLY PAPANIA
AND PYRENEES INVESTMENTS, LLC**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**McClendon, J., concurs.**

Finding no legal or manifest error by the trial court, I concur with the result reached by the majority.